Mr. Justice Hagner
delivered the opinion of the court:
This case comes before this court on exceptions to the auditor’s report.
The bill was filed for the sale of the real estate of one McDonald. The trustee who made the sale under the decree, reported it to the court, and the papers were referred to the auditor to state an account. While the case was before the auditor for this purpose, the trustee filed a petition in which he stated that he had recently learned that the District of Columbia claimed to have a lien upon a certain portion of the real estate for some unpaid taxes ; that he had previously been of the impression that no such taxes existed, and had stated at the time of the sale that the property was free of taxes ; that he was anxious to know what he should do under the circumstances; and asked that an order should pass *576 requiring the District of Columbia to interplead or file its claim that the matter might be decided by the court. The District, in accordance with an order passed for the purpose, did file its claim, in which it stated that in 1876 and 1877 improvements had been made, by way of paving and otherwise, around this triangular piece of land, in the southwestern part of the city, bounded by Virginia avenue, E street and 21st street; that a statement of the cost of that improvement had been filed at the time in the appropriate office, but that the District authorities, being under the impression at the time that the land was public property, made no assessment against it; that when it was discovered in 1885 however that this was not public property, but belonged to the McDonald estate, an assessment had forthwith been made, stating what proportion of the whole improvement was assessable, as they conceived, against this private property, and notice was given to the parties as required by the letter of the District statute upon the subject; and the District claimed that all formalities necessary had therefore been complied with, and that the property was subject to a lien for the amount of tbe taxes.
The private owners, speaking through the trustee here, dispute these contentions. They say as this work was done as far hack as 1876 and 1877, eight years before any notice was given to anybody, that the lien for unpaid taxes was lost in consequence of this neglect of the District to comply with tbe essential formalities enjoined by the statute on the subject.
The question for us to determine is whether or no, under a proper construction of the statutes of the United States' and the acts of the legislative assembly, this view is correct,
Tbe general principles of law on tbe subject seem to be well settled. When the taxing power is given to a municipality, it is implied in general that the burden is to be distributed over all tbe city equally; and wherever a claim is made to charge one proprietor in excess of his ordinary share as a tax payer, because of the proximity of the? improvement to his- property, there must be shown some *577 Statute giving that power ; and there must also be shown an esssential compliance with the provisions of the statute upon the subject, certainly so far as those made for the benefit of the party to be charged are concerned.
The District says that such a statute was passed in 1871. The 37th section of the act of Congress of the 27th February, 1871, declares:
“Thattbe Board of Public Works shall have entire control of, and make all regulations which they shall deem necessary for keeping in repair the streets, avenues, alleys and sewers of the city, and all other works which may be intrusted to their charge by the legislative assembly or Congress. They shall disburse upon their warrant all moneys appropriated by the United ¡States, or the District of Columbia, or collected from property holders in pursuance of law, for the improvement of streets, avenues, alleys, and sewers, and roads and bridges, and shall assess, in such manner as shall be prescribed by law, upon the property adjoining and to be especially benefited by the improvements authorized by law and made by them, a reasonable proportion of the cost of the improvements, not exceeding one-third of such cost, which sum shall be collected as all other taxes are collected.”
This, undoubtedly, was a full grant of power to the municipality to make such special assessments ; and all that remained necessary was that there should be “prescribed by law ” a designated method, according to which the power should be exercised. In August, 1871, the legislative assembly passed an act on this subject, the important parts of which are as follows:
Sec. 1. “That whenever any of the improvements mentioned or referred to in section 37 * * * shall be completed, a statement of the cost thereof shall be prepared by the Board of Public Works, and be filed in the office thereof; and immediately thereafter an asssssment, based upon said statement, shall be made, as provided for in said section of said act, which assessment shall be collected by the said board in the same manner as other taxes of the *578 District of Columbia are now or may hereafter be authorized to be collected.”
Sec. 2. t; That within ten days after making an assessment, the Board of Public Works, shall give, or cause to be given, written or printed'notice to each proprietor of property adjoining and specially benefited by any improvement; of the amount assessed against the same, if he be a resident of the District of Columbia, and if he be a non-resident, to his tenant or agent, requiring the amount to be paid within thirty days from the date of such notice.” * * * *
Sec. 3. “ That if any person or persons, notified as aforesaid, shall neglect or refuse to pay the amount assessed against his or their property, as aforesaid, after the expiration of thirty days, the said Board of Public Works shall immediately thereafter issue certificates of indebtedness, etc.”
It seems very plain that the legislature recognized the importance of having the different steps in this proceeding promptly attended to. The word “ immediately” is used, wisely enough, because these assessments ought to be made and adjusted while the witnesses and persons interested are at hand to testify as to whatever matters might be contested, if contests should be made. It is admitted there was no compliance by the District with this requirement as to making an assessment; and that instead of being, made “immediately.,” it was deferred eight or nine years. Is that delay fatal to the right of the District to enforce the assessment which it undertook to make in 1885? It is enough here to refer to one authority on the general subject, to be found in French vs. Edwards, 13 Wall., 511, where Mr. Justice Field says :
“When the requisitions prescribed are intended for the protection of the citizen, and tó prevent a sacrifice of his property, and by a disregard of which his rights might be and generally would be injuriously affected, they are not directory but mandatory. They must be followed or the acts done will be invalid. The power of the officer in all *579 such cases is limited by the manner and conditions prescribed for its exercise.”
“ All provisions designed to give the taxpayer the opportunity of a review of the assessment, "whether by the-assessors themselves, or on an appeal from their conclusion, are exclusively in Ms interest. Every notice which the statute provides for to that end, whether by publication or otherwise, must be given with scrupulous observance of all its requisites. The notice cannot be shortened by a single day without rendering it ineffectual; the presumption being that the law has made it as short as was deemed consistent with doe protection. A published notice cannot be received as a substitute for a notice to be personally delivered to the person concerned.”
“ The same rules apply to any notice required of subsequent pi'oceedings; if required to be given within a certain time, or in any prescribed mode, it must be so given.” Cooley on Taxation, 1st ed., 218, 365 ; 2d ed., 365.
It seems to us there can be no question that this provision in section 2 of the act of the legislative assembly of August 10, 1871, that “ within ten days after making an assessment the Board of 'Public Works shall give or cause to be given written or printed notice to each proprietor of property adjoining and specially benefited by any improvement, of the amount assessed against the same,” was one-entirely in his interest; was wise and proper, and was in conformity with the universal principal of justice that a man should not be condemned in his person or his property without a hearing. A person whose property was to be charged undoubtedly had the right to determine, first, whether the amount of the assessment against his property was excessive in itself; and then whether the proportion charged against him was disproportionate, and on that ground unjust. Those are matters he had a right to controvert, and he had a right to the thirty days coming next after the expiration of the ten days within which the notice must be given to him, to scrutinize the correctness of the assessment, while the transaction was fresh *580 and the witnesses attainable to expose any error. Blit to delay all notification for eight years was practically to deny him all opportunity of defending himself against what might be a gross overcharge. We think the tardy notice given by the District cannot be considered at all as the equivalent of his rights so carefully promised to him by the statutes.
But it is argued that the notice required by the second section to be given “ within ten days after making an assessment,” only applies to the subsequent particular assessment, which is to disclose the special amounts the authorities may finally decide to be the aliquot portions of the general cost chargeable against the particular lots ; that no notice is required until ten days after the Commissioners have seen fit to make the apportionment, whenever that may be, to be sent to any lot holder of this particular assessment charged against all the lot holders ; and as the Commissioners did give notice to the lot holders within ten days after they actually made the apportionment by a particular assessment against the several lots, they insist they have in fact complied with the law in this respect, although no such assessment was made until eight years after “ the statement” was prepared and filed in the office of the Board of Public Works.
But we think this contention cannot be sustained. The first section requires a preliminary assessment of the amount chargeable against all the lots, for the ratable proportion of all the private proprietors together ; but the requirement of the 2d section, that “within ten days after making an assessment,” the Board of Public Works shall give notice to each proprietor of the amount assessed against Ms property, clearly exacts a notice of the particular assessment, which must disclose the apportionment of the cost of the improvements upon each particular lot (previously aggregated in the preliminary assessment, “based on the statement,”) within ten days after the filing of the statement and the making of the preliminary assessment.
It is further argued that, whatever might have been the *581 requirements of the act, apart from other legislation, any-existing defects in its execution have been cured by the ratifying act, chapter 309, approved June 19,1878. On that day a statute was passed to provide for the revision and correction of assessments for special improvements. It directed the Commissioners to enforce the collection of assessments for special improvements, prepared under the act of the legislative assembly of .1871, as charges upon the property benefited by the improvements in respect of which such assessments were made ; and that upon complaint being made to the Commissioners, within thirty days'from the passage of the act, of errors, etc., in such assessments, the Commissioners were authorized to revise such assessments and correct the same.
But at the passage of that act, nothing existed as respects this work in the shape of an assessment beyond the mere “ statement of costs,” filed' in the office, without any attempt to apportion the cost among the individual proprietors. Hence, if it could be regarded as an assessment in any sense, it was certainly a void assessment, made in disregard of every provision of the act, without notice of any kind, and containing no apportionment.
As the ten days’ notice provided by the second section applies to the second or supplemental assessment, making an apportionment among the lot-holders, the curing statute could not' apply to the apportionment in 1885, which was the only one ever made in this case, since the act of 1878 only embraced assessments which had then already been “prepared” or “made,” “as charges upon the property benefited,” and “ which remained unpaid,” before the passage of the curing act.
In our opinion the assessment and certificate sought to - be enforced by the District are invalid under the existing laws, and do not constitute a lien upon the property.
Exceptions overruled.